## HOUSEHOLD FINANCE CORPORATION OF SUITLAND *v.* HAMER

[No. 79, September Term, 1967.]

*Decided February 6, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Robert L. Kay,* with whom were *Harry Protas* and *Protas
& Kay* on the brief, for appellant.

Submitted on brief by *Peter Larsen* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Household Finance Corporation of Suitland (Household)
sued Henry Hamer to recover $943.60 of $990.00 it had lent
him in 1965, alleging that he had obtained the money by rea-
son of "a materially false statement in writing [his own hand-
writing over his signature] respecting his financial condition,"
the statement that his existing debts totalled $60.00, whereas
in fact they totalled $2,325.29.

Hamer pleaded that he had not promised and was not in-
debted as alleged and that he had been adjudicated a bankrupt
by the District Court for the District of Maryland in 1966, hav-
ing been discharged on May 11, 1966, and that Household "was
duly listed on the Bankruptcy Schedules * * * for the same
debt on which this action is now brought."

Household filed a replication in which it alleged that the dis-
charge did not release the debt sued on since that debt con-
stituted

"a liability for obtaining money or property by false
pretenses or false representations, or for obtaining
money or property on credit, or obtaining an exten-
sion or renewal of credit within the meaning of § 17
a (2) (11 USC § 35) of the Bankruptcy Act, in that

the loan obtained * * * was secured through the making and the publishing of a materially false financial statement which the plaintiff relied upon in making the said loan * * *."

At the trial Household proved the allegations of fact on which it grounded its case and Hamer moved for a dismissal, a motion which Judge Meloy, sitting without a jury, granted, holding that Household and Hamer had dealt at arms' length and that "fraud may not be predicated on a bare non-disclosure of facts where the information regarding them is just as accessible to the one party * * * as to the other party."

We think that, contrary to Judge Meloy's decision, the controlling law is that set out in Household's replication.

In *Slacum v. Trust Co.*, 163 Md. 350, the trust company sued Slacum for the balance on a promissory note purportedly signed by him and his wife, the declaration charging that the wife's signature had been forged by Slacum. Slacum pleaded his discharge in bankruptcy and the trust company demurred to the plea and the trial court sustained the demurrer. This Court said (at page 352) :

"The appellant contends that his discharge in bankruptcy relieves him of the obligation, while the appellee contends that the debt of the appellant was based on his fraudulent representation that his wife signed the note, and that but for this the appellee would not have purchased the note, and that, under section 17 of the Bankruptcy Act of the United States (11 U. S. C. A., sec. 35), the obligation of the appellant is a debt 'not affected by a discharge,' the second clause of the section excepting, from the debts for which a bankrupt may be discharged, 'liabilities for obtaining property by false pretenses or false representations.' 'As to the character of the pretenses or representations intended by the statute it may be said that a representation as to a fact made knowingly, falsely, and fraudulently for the purpose of obtaining money or property from another and by means of which such money or prop-

erty is obtained, is a legal fraud within the statute.'
*Black on Bankruptcy*, sec. 744."

*See also Levin v. Singer*, 227 Md. 47.

In 1960 Congress amended Section 17 of the Bankruptcy Act to insert in 11 U. S. C. § 35 (a) (2) the provision that a discharge in bankruptcy does not make uncollectible a provable debt which is a liability

> "for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * * *." [1]

It is clear that a state court has jurisdiction to determine whether a debt has been discharged in bankruptcy. *Slacum v. Trust Co., supra; Levin v. Singer, supra; In re Bell*, 212 F. Supp. 300 (E. D. Va. 1962) ; *Yellow Creek Logging Co. v. Dare*, 216 Cal. App. 2d 50 (1963) ; 9 Am. Jur. 2d *Bankruptcy* § 744 (1963).

It is also settled that "the effectiveness of § 17 (a) (2) [11 U. S. C. § 35 (a) (2)] in saving liabilities within its terms

---

1. "A provision added to the Bankruptcy Act in 1960 excepts from a discharge in bankruptcy liabilities for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive. The ground of this exception was, substantially and formerly, the ground for opposition to discharge, but the same amendatory act changed the provisions of Bankruptcy Act § 14 (c) (3), so as to limit the ground of opposition to discharge for a false financial statement to cases of business bankrupts. In the Senate report on the bill, it has been explained that the purpose of the amendatory act is to assure that although the obtaining of money or property on credit through the issuance of a false financial statement is no longer to be grounds for the denial of a discharge to a nonbusiness bankrupt, any obligation incurred as a result of such a statement is to be nondischargeable under § 17 of the Bankruptcy Act." 9 Am. Jur. 2d *Bankruptcy* § 785 (1963).

from discharge is not dependent upon interposition of objections to discharge, and the creditor to whom the liability runs need not participate in any manner in the bankruptcy proceedings in order to safeguard his rights as against discharge of the bankrupt, if one is granted." 9 Am. Jur. 2d *Bankruptcy* § 780 (1963); *Time Finance Co. v. Nelson,* 227 S. W. 2d 189 (Ky. 1950); *Ohio Finance Co. v. Greathouse,* 110 N. E. 2d 805 (Ohio 1947); *Watts v. Ellithorpe,* 135 F. 2d 1 (1st Cir. 1943); *In re Lowe,* 36 F. Supp. 772 (W. D. Ky. 1941).

We find that Household's proof fully supplied the elements specified in the Bankruptcy Act of obtaining money (including a renewal of credit) by means of a materially false statement in writing "respecting * * * financial condition" made with intent to deceive which was relied on by the lender who, in fact, was deceived,[2] and thus shifted the burden of going forward to the borrower. *Slacum v. Trust Co., supra; M-A-C Loan Plan, Inc. v. Crane,* 225 A. 2d 33 (Cir. Ct. App. Conn. 1966); *H. A. Co. of Provo v. Campbell,* 413 P. 2d 595 (Utah 1966); *MAC Finance Plan of Nashua, Inc. v. Stone,* 214 A. 2d 878 (N. H. 1965); *Beneficial Finance Co. of Charleston v. Collins,* 149 S. E. 2d 221 (W. Va. 1966); cf. *Branch v. Mills and Lupton Supply Co.,* 348 F. 2d 991 (6th Cir. 1965), cert. den. 382 U. S. 997 (1966); *Federal Provision Co. v. Ershowsky,* 94 F. 2d 574 (2d Cir. 1938).

> *Judgment reversed, with costs, and case remanded for entry of a judgment in favor of appellant.*

---

2. Hamer filled out a financial statement which instructed him that "Applicant(s) Must List All Debts—Do Not Omit Any Debts," and in his own handwriting over his signature listed one debt of $60.00 and wrote "I have no other debts." He actually then owed some $2,400 to various stores as his bankruptcy schedules soon showed. Household's lending officer testified that before making the loan he personally made a credit clearance check of Hamer through the Metropolitan Lenders' Exchange which lists only loans by finance companies—not general credit information—and that he would not have made the loan to Hamer had he known he owed what he did owe.