Rockingham
No. 83-086

PERLEY DAN RAWSON

v.

JAMES NORMAN BRADSHAW

June 22, 1984

*Law Offices of James J. Kalled*, of Ossipee (*James B. Kazan* on the brief and orally), for the plaintiff.

*Wiggin & Nourie*, of Manchester (*William S. Orcutt* and *Alan R. Kusinitz* on the brief, and *Mr. Kusinitz* orally), for the defendant.

KING, C.J.   The plaintiff, Perley Dan Rawson, brought an action against the defendant, James Norman Bradshaw, in superior court to recover for personal injuries, which he alleged resulted from a two-car, no-contact automobile accident. The plaintiff claims that he suffered neck injuries as a result of being forced off the road in order to avoid a collision with the defendant's vehicle.

After a trial lasting six days, the jury returned a verdict for the defendant. The plaintiff appeals, contending that the trial court erred in denying him the right to introduce evidence of the defendant's intoxication at the time of the accident and in failing to instruct the jury adequately. We reverse and remand for a new trial.

Prior to trial, the plaintiff moved for summary judgment on the issue of liability, which was granted by the Court (*Bean*, J.), leaving only the issues of causation and damages to be determined by the jury. In conjunction with this ruling, defense counsel moved to exclude from trial all evidence concerning the manner in which the defendant operated his vehicle, maintaining that such evidence was irrelevant as to the remaining issues in the case. The Court (*Dalianis*, J.), however, upon denying the defendant's motion, ruled that because the defendant denied the existence of a causal link between his negligence and the alleged injuries of the plaintiff, the jury was entitled to hear testimony concerning the plaintiff's observations, "[f]rom the moment he observed the defendant to the point where he went off the road and what his responses to [the defendant's actions] were."

Defense counsel further moved to exclude from trial all evidence of the defendant's alleged intoxication at the time of the accident, on the ground that the plaintiff was not entitled, as requested, to enhanced damages based upon the defendant's alleged intoxication. The Court (*Souter*, J.) granted this motion.

Immediately prior to trial, the plaintiff moved to set aside that portion of the court's order which precluded him from introducing evidence of the defendant's intoxication. He argued that such evidence was relevant, despite the court's rulings on liability and enhanced damages, in view of the defendant's denial of causation—a

denial of the allegation that the plaintiff was faced with a situation which required him to make the abrupt maneuvers which resulted in his injuries.

The Court (*Dalianis*, J.) denied the plaintiff's motion to set aside its earlier order, stating "that the plaintiff's summary judgment on the point of liability foreclosed consideration of this issue . . . . It would have been allowed in the trial, probably over objection, but since the plaintiff chose this course originally, the court felt that he should be held to it."

At trial, Rawson testified as to the circumstances of the accident which allegedly resulted in his injuries. Bradshaw did not attend the trial, and no witness testified to contradict the account of the accident related by the plaintiff.

Rawson testified that, while traveling southbound on Route 150, in South Hampton, he observed the Bradshaw vehicle, which was traveling northbound, veer into his travel lane. The vehicle then "shot back" into the northbound lane, finally returning to the southbound lane where it approached him at a high rate of speed "on a four-wheel drift"—"[i]t just kept rocking and rolling." Rawson claimed that he immediately stepped hard on his brakes and, out of instinct, "cut to the right," striking his head on the steering wheel, before managing to bring his vehicle to an abrupt stop. Although the Bradshaw vehicle came within an "eyelash" of hitting his vehicle, Rawson testified that he managed to avoid actual contact. Rawson further testified that when he turned his head to ascertain the fate of the Bradshaw vehicle, which had careened off the highway, he felt an extreme pain in his neck as if something had snapped. He nonetheless proceeded to go to the aid of Bradshaw.

Upon cross-examination and throughout the course of the entire trial, defense counsel continually attacked the plaintiff's credibility and thereby his account of the accident, maintaining that the defendant's negligence could not possibly have caused the plaintiff's alleged injuries since the plaintiff, in fact, simply "saw something happening, slowed down and brought his pickup truck . . . to a stop," a series of events providing no "mechanism of injury."

On appeal, the plaintiff contends that, in light of the repeated attempts by defense counsel to impeach his account of the accident—his observations and reactions (testimony which the court had ruled relevant and admissible on the issue of causation), evidence of the defendant's intoxication remained relevant and should have been admissible to substantiate the plaintiff's testimony.

The plaintiff argues that a jury would have been more likely to credit his contention that he was faced with an out-of-control vehicle if it had known that the defendant was intoxicated. Such knowledge

would also have made more believable his contention that he was forced, in order to avoid a collision with the defendant's vehicle, to make abrupt maneuvers which resulted in his cervical injuries.

We recognize that the credibility of the plaintiff's testimony in this case was vital to the jury's resolution of the issue of causation. Although the trial court granted summary judgment for the plaintiff on the issue of the defendant's liability, the court never informed the jury of the facts underlying this determination. The jury was never furnished with a description of Mr. Bradshaw's negligent conduct by the court but, rather, was simply informed that "legal fault has already been determined."

The sole description of the defendant's conduct was furnished to the jury through the testimony of the plaintiff, whose credibility was repeatedly attacked. The jury was left to decide whether the defendant's conduct caused the plaintiff's injuries based solely upon the plaintiff's testimony—his recitation of his observations of the defendant's conduct and his reactions to that conduct.

■ In light of the procedural aspects of this case and the repeated attempts by defense counsel to impeach the plaintiff's credibility, and thereby his account of the accident, we hold that the plaintiff should have been allowed to introduce evidence of the defendant's intoxication, not for the purpose of enhancement of damages, but to explain and make credible his testimony as to the erratic behavior of the defendant's vehicle just prior to the accident and his resultant need to resort to abrupt maneuvers, in a panic situation, to avoid a possible collision. See State v. Dustin, 122 N.H. 544, 546, 446 A.2d 1186, 1188 (1982) ("Evidence is relevant if it tends in any way to establish a proposition which is of consequence in an action."); State v. Ebelt, 121 N.H. 143, 144, 427 A.2d 29, 30 (1981) ("Relevant evidence is evidence that tends 'to establish a fact of consequence to the determination of the action.'") (quoting Welch v. Bergeron, 115 N.H. 179, 182, 337 A.2d 341, 343 (1975)).

■ Any resultant prejudice to the defendant which might have been caused by the admission of such evidence, would, in this instance, have been minimal and clearly outweighed by the probative value of the evidence in resolving the disputed issues of credibility and causation. See State v. Dustin, 122 N.H. at 547, 446 A.2d at 1188; Rogers v. Rogers, 80 N.H. 96, 97, 114 A. 270, 270 (1921).

■ In order to avoid confusion in future cases such as this one, where either a plaintiff successfully moves for summary judgment on the issue of liability or a defendant concedes liability, the parties should provide the trial judge with a statement of agreed facts suffi-

cient to explain the case (specifically the defendant's negligent conduct) to the jury and to place it in a proper context so that the jury might more readily understand what they will be hearing in the remaining portion of the trial. Absent such an agreement on facts, the matters cannot be properly severed, and summary judgment on individual issues, therefore, should not be granted or a trial on liability be waived, because it will lead to the types of disputes before us herein.

The second issue raised by the plaintiff on appeal concerns the adequacy of the trial court's instructions to the jury. We will address only those two issues preserved by the plaintiff at trial and subsequently raised by him on appeal.

The plaintiff requested that the jury be instructed as follows:

> "The plaintiff is entitled to full compensation for all damages proximately resulting from the defendant's act, even though some of his injuries may have been aggravated or precipitated by reason of his pre-existing physical condition, and were rendered more difficult to cure by reason of his existing state of health, or because of a latent condition the injuries were rendered more serious to him than they would have been had he not had said latent condition."

(Request Number 5.)

The court agreed to give the instruction in substance and thereupon instructed the jury that the plaintiff

> "is entitled to full compensation for his damages proximately resulting from Mr. Bradshaw's acts even though some of the injuries may have been rendered more difficult to cure by reason of his existing state of health or, because of a latent condition, the injuries were rendered more serious to him than they might have been if he had not had that condition."

The plaintiff contends, however, that the court failed to give the operative portion of his requested instruction dealing with the defendant's liability for injuries which "may have been *aggravated or precipitated* by reason of [a] pre-existing physical condition." (Emphasis added.)

The general purpose of a trial court's charge is to state and explain to the jury "in clear and intelligible language the rules of law applicable to the issues of fact upon which their verdict is to be based." *Poulin v. Provost*, 114 N.H. 263, 264, 319 A.2d 296, 297 (1974); *Cyr v. Sanborn*, 101 N.H. 245, 250, 140 A.2d 92, 96 (1958). "It

[is] the duty of the Trial Court to *fully* and correctly instruct the jury as to the law applicable to the case . . . ." *Cyr v. Sanborn supra* (emphasis added); *see MAC Finance Co. v. Stone,* 106 N.H. 517, 518, 214 A.2d 878, 879 (1965). It is not necessary that a court use the exact words of any party's request. *Murray v. Boston & Maine R.R.,* 107 N.H. 367, 371, 224 A.2d 66, 70 (1966). Rather, the test of adequacy of any charge is whether, taken as a whole, "it fairly presented the case to the jury in such a manner that no injustice was done to the legal rights of the litigants." *Poulin v. Provost supra.*

■ We conclude that the instruction given by the court in response to plaintiff's request number 5 effectively instructed the jury as to the defendant's liability for injuries which "may have been *aggravated* . . . by reason of [a] pre-existing physical condition." (Emphasis added.) The court simply employed different, but synonymous, words when delivering its instructions to the jury. The court, rather than instructing the jury on the defendant's liability for injuries which "may have been aggravated" by reason of the plaintiff's pre-existing condition, instead instructed the jury as to the defendant's liability for injuries which may have been "rendered more serious" or "rendered more difficult to cure."

The court did not, however, give the jury an instruction on the defendant's liability for injuries which may have been *"precipitated"* solely by reason of the plaintiff's pre-existing physical condition. While the plaintiff did not specifically allege, in his pleadings, that his current neck injuries were "precipitated" solely by reason of a pre-existing physical condition, it is evident from the record that such was a claim of the plaintiff.

From the time of his opening statement, the plaintiff acknowledged to the jury that he had suffered numerous prior injuries to his neck. His treating physician testified that the earlier injuries to the plaintiff's neck could well have weakened the neck structures and, therefore, that "it would take less force" to precipitate the symptoms now experienced by the plaintiff than would be the case had he not experienced these earlier episodes.

■ Defense counsel at no time either indicated surprise at this claim or requested a continuance to meet the claim. In fact, the defendant's pre-trial statement explicitly listed as an enumerated defense that "plaintiff's pre-existing condition caused or contributed to cause the complaints alleged." Based upon these factors, we conclude that the plaintiff was entitled to an instruction on the defendant's liability for damages which may have resulted from the accident but would not have resulted but for the plaintiff's pre-existing physical condition caused by his past injuries.

An instruction of this nature would have helped to explain to the jury the relevance of the plaintiff's prior neck injuries to the issues of causation and damages presently before them for resolution. The fact that this issue remained unresolved in the jurors' minds is evident from the question they submitted to the court within the first hour of their deliberations: "Is there law pertaining to what effect prior injury may have relative to this incident?"

■ Based upon a review of the remainder of the trial court's charge, we conclude that the court properly instructed the jury on the issue of causation in general. The charge, taken as a whole, would not, as contended by the plaintiff, have misled the jury to believe that the plaintiff, in order to recover, had to prove that his injuries were derived wholly from the Bradshaw accident.

The court properly defined proximate cause as "a cause which, in direct, unbroken sequence, *causes or contributes to cause* the injury." (Emphasis added.) This instruction, coupled with the additional instruction on "precipitation," to which we have already ruled the plaintiff is entitled, would be sufficient to instruct the jury on the plaintiff's theory of the case—that he had a neck pathology prior to the accident and that the combined results of the accident events and the previously weakened structures of his neck resulted in the symptoms which developed thereafter. This combination of instructions would effectively relate to the jury the law pertaining to the effect of the plaintiff's pre-existing condition, caused by his prior injuries, upon their resolution of the issues of causation and damages.

We reverse and remand this case to the superior court for a new trial in accordance with this opinion.

*Reversed and remanded for new trial.*

SOUTER, J., did not sit; the others concurred.